GOODALE REAL ESTATE CORPORATION, Landlord. *v.* SUBRIDGE HOLDING CORPORATION, Tenant.*

Municipal Court of New York, Borough of Manhattan, Seventh District, March 3, 1931.

* See, also, 139 Misc. 20?.

*Boehm & Zeiger*, for the landlord.

*Hollander & Bernheimer*, for the tenant.

GENUNG, J.   This is a summary proceeding to remove the tenant upon the ground that it holds over without the landlord's permission, after the expiration of the term.   The tenant has defaulted in the payment of rent due on and before January 1, 1931, amounting to $7,500, and also failed to pay the real estate taxes for the second half of 1930, amounting to $7,425, which became a lien on November 1, 1930.   The lease provided that the tenant will pay the taxes as they became payable and it further provided in paragraph 3 thereof that if the tenant defaults in the performance of any covenant or agreement of the lease, the landlord is given the right to terminate the lease, and the term thereby granted, upon the giving of ten days' notice in writing to the tenant of the landlord's intention to terminate such lease, " at a date not less than 20 days after the occurrence or default on which such notice is predicated."

Such written notice was served by the landlord on January 22, 1931, of its intention to terminate the lease on February 1, 1931, by reason of the said taxes remaining unpaid.   Thereafter a demand was duly served upon the tenant for the surrender of possession of the premises, and, the tenant failing to comply therewith, this holdover proceeding was commenced on February 14, 1931.

The tenant's chief contention in opposition to this proceeding, while admitting its failure to pay the taxes, is that it is not in default, and that there is no warrant for an earlier termination of

the lease by reason of a provision contained in paragraph 22 of the lease. It is necessary, before quoting that provision, to refer to paragraph 21 of the lease, wherein the tenant agrees to alter the demised premises by installing store front and stores on the ground floor of said premises, over the entire One Hundred and Eighty-first street frontage thereof, such alteration to be begun not later than March 1, 1932, and to be completed with all due diligence. It is therein further provided that before commencement of such alteration the tenant will deliver to the landlord a surety company bond, to be approved by the landlord as to form and contents, " guaranteeing the due completion of said alteration and the installation of said stores."

Then follows paragraph 22 of the lease, which reads as follows: " 22. Upon the execution and delivery hereof the Tenant shall deposit with Francis M. Hugo the sum of Twenty-five Thousand ($25,000) Dollars, good and lawful money of the United States of America, which said sum with interest thereon at the rate of 4% per annum shall be repaid to the Tenant upon the due completion of the installation of said stores as herein just above provided. Until such repayment, however, the said sum of $25,000 with any accrued interest thereon shall be resorted to, used and applied by the Landlord for the purpose of making any default or deficiency which may be suffered or permitted by the Tenant in the payment of the rent herein reserved."

The tenant, claiming that taxes unpaid are by the terms of the lease made the equivalent of rent unpaid, contends that the fund of $25,000 should be resorted to for making up the default or deficiency by reason of which this proceeding was instituted, as the language of the provision above quoted, literally read, would seem to require. The landlord's reply to this contention is threefold: That the taxes unpaid do not become rent, that at the landlord's option for the purpose of enforcing its payment, a proper construction of the provision in question does not compel the landlord to exhaust the said fund of $25,000 at the will of the tenant, in making up defaults in the payment of rent or taxes, prior to the commencement of the work of installation of the store fronts, since such fund was primarily deposited for the purpose of securing the performance of such alteration, and that in any event the present tenant in this proceeding had no title or interest in the said fund of $25,000 prior to the commencement of this proceeding, since such fund remained in the hands of the original tenant, the Handby Holding Company, Inc., which did not assign the fund to the present tenant until February 14, 1931.

Paragraph 3 of the lease provides for an earlier expiration of the

term of the lease for the tenant's breach of covenant on the service of a ten days' notice by the landlord. This clause, according to the authorities, entitled the landlord to maintain this summary proceeding against the tenant as a holdover, as upon the expiration of the lease, because of the conditional limitation prescribed by the lease. (*Reisberg* v. *Ownit Realty Corp.*, 133 Misc. 156; *Ehret Holding Corp.* v. *Anderson Galleries, Inc.*, 138 id. 722; *Burnee Corp.* v. *Uneeda Pure Orange Drink Co., Inc.*, 132 id. 435.)

The chief point of contention between the parties rests upon a construction of the terms of the provision in paragraph 22, above quoted, and it has been agreed by both parties to this proceeding that the construction is solely a matter for the court's determination upon the agreed statement of facts which have been submitted to the court.

The main purpose of the deposit of $25,000 was clearly to secure to the landlord the performance of the tenant's covenant to install the stores in the premises. This is clearly implied from the language that the entire fund of $25,000 with interest at the rate of four per cent " shall be repaid to the tenant upon the due completion of the installation of said stores as herein just above provided." While there is no express phraseology that the fund is deposited as " security " for such alteration, the implication to that effect is clearly evidenced by the time and the condition fixed for the return of such fund. Nevertheless, that language immediately succeeding that just quoted reads as follows: " Until such repayment, however, the said sum of $25,000 with any accrued interest thereon shall be resorted to, used and applied by the Landlord for the purpose of making up any default or deficiency which may be suffered or permitted by the Tenant in the payment of the rent herein reserved." Does this create a repugnancy, or can both of these apparently contradictory provisions be reconciled so as to give full force and effect to both?

If the tenant may compel the landlord to apply this fund towards the payment of rent and taxes accruing before March 1, 1932, when work of construction is to be commenced by the tenant, it would follow that the entire fund might be exhausted at the will of the tenant long before the arrival of such date, and the provision that the fund should be repaid to the tenant upon the due completion of the installation of said stores would be completely nullified. On the other hand, the subsequent language embodies a clear direction for the application of the said fund towards the making up of any default in the payment of rent which may occur until such repayment of the fund.

In an effort to avoid a repugnancy which would result in either

one or the other of these two provisions being nullified, and to arrive at a construction which will give force and effect to both, the court construes the entire paragraph as indicating the intention of the parties to be that until such repayment — that is, after the repayment has become a legal obligation on the part of the landlord — the fund shall be resorted to for the purpose of the payment of any rent or taxes that may become due under the terms of the lease. This conclusion. is borne out by the language at the commencement of the 2d sentence in the paragraph, " Until such repayment," that is, the repayment mentioned in the preceding sentence, which is to take place " upon the due completion of the installation of the said stores as herein just above provided." In other words, at the completion of the stores, the tenant in a summary proceeding for non-payment of rent or taxes thereafter accruing, up to the full amount of the said fund of $25,000 with interest thereon, would be limited merely to the remedy of an independent cause of action for the recovery of the fund, or to a counterclaim in a summary proceeding, but would be entitled to an absolute defense of no default, by reason of the language of this provision requiring the landlord to apply this fund towards the payment of the rent and the taxes, up to the point of exhaustion of the fund. The tenant is thereby freed from the possible jeopardy of inability to collect the fund, or of any possible conflicting interests in such fund that might intervene between the time of its deposit in the hands of a person other than the landlord, and the time when repayment would be required under the terms of the lease.

Another form of construction which would permit both provisions of this paragraph to remain in the lease and avoid an irreconcilable repugnancy is to hold as the landlord contends, that the second sentence of the paragraph gives the landlord the option of applying this fund towards any deficiency in rent, in addition to its right to retain the fund until the completion of the alteration, even if such construction requires the substitution of the word " may " for " shall " in the language " shall be resorted to, used, and applied by the landlord," etc.

Moreover, if the provision in question be given a strictly literal construction in its entirety, it cannot be employed by the tenant as a means of accomplishing a cure of its default in the non-payment of taxes, since the clause only speaks of resorting to this fund for the purpose of making up any default or deficiency which may be suffered or permitted by the tenant in the payment of the *rent* reserved. It is true that a paragraph of the lease provided that if the tenant fails in his covenant to pay the taxes, " they may be added to form part of the rent due on any day subsequent thereto,

and be collectible in like manner." This language clearly gives the landlord the option to treat the unpaid taxes as additional rent and is intended for the landlord's benefit. The landlord may, however, under other provisions of the lease treat the tenant's breach in the non-payment of taxes as a ground for the earlier expiration of the lease. The landlord here has not elected to treat the unpaid taxes as rent, but instead has instituted this holdover proceeding as for a breach of covenant by virtue of the conditional limitation.

There is finally another cogent reason why the tenant cannot avail itself of paragraph 22 of the lease as absolving it from the default which is made the basis of this proceeding. The assignment of October 17, 1929, of the lease in question by the Handby Holding Corporation, the original tenant, to the Subridge Holding Corporation, the present tenant in this proceeding, did not specifically include an assignment of this fund of $25,000 deposit. It appears that an assignment of all the right, title and interest of the original tenant, in and to this fund, was only made on February 14, 1931 (Tenant's Exhibit " A ") which was after the date of the termination of this lease pursuant to the notice served by the landlord on January 22, 1931, stating its intention to terminate such lease by reason of the conditional limitation as of February 1, 1931. Under the settled law of this State, that an assignment of a lease of itself does not transfer title to the security deposited at the execution of the lease, the present tenant, prior to the termination of the lease by conditional limitation, had no title to such deposit. (*Nemtzoff* v. *Vangnier*, 163 N. Y. Supp. 1075; *Shattuck* v. *Buek*, 158 App. Div. 709; *Friedman* v. *Isaacs*, 133 Misc. 435, 438; *Fallert Brewing Company* v. *Blass*, 119 App. Div. 53; *Mauro* v. *Alvino*, 90 Misc. 328; *Knutsen* v. *Cinque*, 113 App. Div. 677; *Richards* v. *Browning*, 214 id. 665.) The assignment by the Handby Corporation to the Subridge Corporation on February 14, 1931, of the former's right, title and interest to the $25,000 deposit is in itself an admission by practical construction of the parties that the previous assignment of the lease did not transfer the security deposited thereunder. Since the tenant had no right, title and interest in this deposit prior to the expiration of this lease by virtue of the conditional limitation, and the notice served by the landlord, it follows that it could not direct the landlord to apply the said fund in payment of its obligations to pay rent or taxes accruing under the lease prior to such notice of expiration.

For all of the foregoing reasons the final order is awarded to the landlord. Five days' stay.